*67 OPINION OF THE COURT
Harold Hyman, J.
Koren-DiResta Construction Co., Inc., the assignee of all accounts receivable and rights of D. Foley Masonry Corp. (Foley), a mechanic’s lienor of certain real property owned by Consolidated Edison Co. and upon which Foley performed certain labor and supplied materials at the request of and pursuant to a contract with the contractor (assignor herein), moves to have the court reject the assignee’s proposed settlement with Consolidated Edison. The motion is based upon the movant’s claim that the assignee’s proposed distribution of the proposed settlement moneys "does not recognize the claimed priority of mechanic’s lienors of the assignor over other beneficiaries of the trust fund.”
To put the issue more succinctly: Do creditors who have performed or supplied labor and/or materials in the improvement of certain real property and who have filed a mechanic’s lien as to said real property have, per se, a prior right to funds emanating from the owner of said real property as against other "trust beneficiaries” (as defined by Lien Law, art 3-A, § 71, subds 2, 3) who have not filed any such or similar lien, but having or having had the right to do so?
Movant’s position is that priority does exist within the purview of Onondaga Commercial Dry Wall Corp. v 150 Clinton St. (25 NY2d 106) and the assignee for the benefit of creditors agrees that distribution of the Consolidated Edison settlement moneys, which he seeks to make, should be made on such basis, that is, that the duly perfected mechanics’ lienors are to have priority over article 3-A of the Lien Law trust fund beneficiaries to the funds available for the specific jobs against which individual liens have been filed.
It is unfortunate that the assignee for the benefit of creditors has taken such a position, but it is understandable when one views the assignee’s proposal to the creditors dated July 1, 1974, as to which the court will make certain observations hereafter. In any event, the court completely disagrees with the position of movant as well as that of the assignee. The court is of the opinion that both are based upon a clear misconception of Onondaga (supra) and of the applicable statutes involved.
In Harman v Fairview Assoc. (25 NY2d 101, 103), and specifically referring to Onondaga, the identical court which decided Onondaga, stated:
*68 "In that case the issue turned on the availability to trust beneficiaries of a deposit paid into court as a substitute for the real property in a lien foreclosure action. In this case the issue presented is the right of a trust beneficiary, who has no lien [but is a trust beneficiary nevertheless], to assert a claim in an action brought by an article 3-A trustee seeking a proper distribution among statutory trust beneficiaries of the fund held by the trustee” and (supra, p 105) further stated: "But an article 3-A trust beneñciary does not have to have a lien or be a lienor. He becomes a beneñciary of a trust when one comes into being by virtue of a status created by law.
"The statute setting up the trust status expressly provides that persons coming within its definitions are 'beneficiaries of the trust’ and this results 'whether or not they have ñled or had the right to ñle a notice of lien’ (§ 71, subd. 4), language * * * stressed in Aquilino v. United States of America (10 N Y 2d 271, 277).” (Emphasis supplied.)
It is clear that in Onondaga a deposit with the clerk (of the court) had been made pursuant to section 55 of the Lien Law, and that pursuant to said statute it took "the place of the property upon which the lien[s] existed, and [was] subject to the lien”; and, that the fund was so "deposited” pursuant to court order in two lien foreclosure actions brought under article 3 of the Lien Law to enforce their mechanics’ liens, and in accordance with section 55 of the Lien Law, "after an action [was] brought”.
Therefore, where an action has not been brought to foreclose a duly filed mechanic’s lien, but where an offer is only made by the recipient of the labor and materials to one who is merely a "statutory trustee” (assignee for the benefit of creditors, in place of the assignor) to settle all claims, the moneys are not to be deemed payable or offered within the context or pursuant to section 55 of the Lien Law as being in "substitution of the real property”. It rather is, at such point, an offer to pay all suppliers of labor and/or material who supplied such to "improve the specific realty in question” outside of the scope of section 55 of the Lien Law. Such moneys are "trust assets” payable to trust beneficiaries under article 3-A of the Lien Law and, as stated in Aquilino v United States of Amer. (10 NY2d 271, 276) " 'whether or not they have filed, or had the right to file, a notice of lien’.” Clearly, therefore, a defined "trust beneficiary” does not lose equality in distribution if he has merely failed to file a notice of mechanic’s lien, nor does it *69 give to one who had filed priority in distribution. The only times the mechanic’s lienor would obtain priority, so-called, is when, "after an action is brought [to foreclose a lien], the owner * * * file[s] with the clerk with whom the notice of lien is filed * * * an offer to pay into court the sum of money stated therein, or to execute and deposit securities * * * in discharge of the lien, and serve[s] upon the plaintiff a copy of such offer” (Lien Law, § 55); or, as provided for in section 20 of the Lien Law, "A lien specified in this article * * * may be discharged after the notice of lien is filed at any time before an action is commenced to foreclose such lien, by depositing with the county clerk * * * a sum of money equal to the amount claimed in such notice, with interest to the time of such deposit. * * * After action to foreclose the lien is commenced it may be discharged by a payment into court of such sum of money, as, in the judgment of the court * * * will be sufficient to pay any judgment which may be recovered in such action. * * * An order for the surrender of such moneys to the lienor * * * may be made by any court of record having jurisdiction of the parties.” (Italics supplied.) In such latter circumstance the deposit of money for the discharge of the lien is not a "payment”, but is "a substitute for the property” from which the lien is discharged, only to be thereafter obtainable by the lienor upon his establishment of his lien in an action brought for that purpose (Matter of Standard Tile Co. v O’Mara, 256 App Div 1096, rearg granted 257 App Div 834). True, such "deposit” would be solely for benefit of "that” lienor whose lien has been filed and as to which the deposit was made (First Fed. Sav. & Loan Assn. of Rochester v Burdett Ave. Props., 41 AD2d 356, app dsmd 33 NY2d 765).
In both instances, either under section 55 or 20 of the Lien Law the "deposited” fund is substituted for the real property as to "such specifically filed lien, or liens”.
To again quote from Onondaga Commercial Dry Wall v 150 Clinton St. (25 NY2d 106, 110, supra): "The statute [Lien Law, art 3-A] on the whole, although it is not without its obscurities, seems to suggest a legislative intent to give lienors ffrst access to a fund paid into court in a lien foreclosure action and to have the trust created by article 3-A attach to a residue after satisfaction of valid liens.” (Emphasis supplied.) To add thereto the court’s observation with respect also to section 20 of the Lien Law, as stated in First Fed. Sav. & Loan Assn. of Rochester v Burdett Ave. Props. (supra) that, this *70 section (Lien Law, § 20) suggests a legislative intent to give those lienors first access to the specific fund paid into court prior to a lien foreclosure action to discharge such lien and to have the trust created by section 70 et seq. of the Lien Law attach to any "residue” which remains after satisfaction of such lien upon a determination of its validity in an action to enforce the same, since the money so deposited is deposited solely for the beneñt of that person or persons whose lien or liens have already been filed; thus, subsequent lienors (subsequent to the deposit) have no valid claim for a pro rata share of said specific deposit before prior lienors have had their liens fully paid and discharged. Under such circumstance it would seem to place the "subsequent lienor” in the same subordinate class of "trust beneficiary” who would have to stand by and see the so-called "priority mechanic’s lienor”, one who has merely gained such position because of having either "filed” a mechanic’s lien and who has commenced foreclosure of said lien and as to which a written offer is filed with the clerk, or as to which a deposit has been thereafter made pursuant to section 20 or 55 of the Lien Law.
To accept movant’s and the assignee’s position would be to give to a mechanic’s lienor a very simple method of obtaining priority payment for his own lien out of moneys actually due and payable to the entire "trust (class) beneficiaries”, and thus to then leave the remaining "trust beneficiaries” to pursue the owner, contractor, or one responsible, for any possible excess, only then to be met with a defense that the fund, not deposited with the county clerk as to such specific liens, either pursuant to section 20 or 55 of the Lien Law, has been exhausted.
How easily the remaining unpaid lienors and trust beneficiaries could thus be deprived of their legislatively intended protection regardless of whether their claim has or has not, at that time, matured, is obvious (Aquilino v United States of Amer., 10 NY2d 271, supra); such could never have been the legislative intent or purpose. To the contrary, the obvious legislative purpose was to insure that money paid toward the improvement of the property was to be equitably shared by those entitled to be paid (Putnins Contr. Corp. v Winston Woods at Dix Hills, 72 Misc 2d 987, affd 43 AD2d 667, affd 36 NY2d 679).
This court, although unhappy with Onondaga because it may present a method by which a grasping mechanic’s lienor *71 can obtain preferential treatment at the expense of others in the same "trust beneficiary” class, that is, by filing his lien and then conspiring with the "owner” or "contractor” to deposit a fund pursuant to section 20 oí even 55 of the Lien Law, is nevertheless obliged to follow same. Yet, in doing so, it cannot and does not hold with the moving party and those who support it under the present posture of the proceeding before it. Here the fund is merely an "offer” but not "deposited” under either section 20 or 55 of the Lien Law. To do so would in the considered opinion of this court, be totally violative of legislative purpose and intent and would be a return back to a time prior to the enlightened, but not perfect, enactment of article 3-A of the Lien Law.
The court has also examined the proposal dated July 1, 1974 made prior to the advent of the assignment for the benefit of creditors (July 9, 1974) to collect "trust funds” from Consolidated Edison Company (trustee-owner) and to distribute such funds to creditors upon a basis of two thirds of the amount due to such creditors, upon the further condition that said creditor waive all lien rights and any and all rights to institute proceedings for the money owed to it and that the assignee would, for his services rendered, receive 5% of the gross deposited. The viability of such an agreement would bring into serious question a conflict of interest on the part of the present assignee who was then a coreceiver with the assignor of such fund was allegedly desposited with them. Furthermore any such intended transaction by an assignee for the benefit of creditors, after said assignment came into being could only become viable with prior permission of the court upon due notice to "all” creditors, which permission the present assignee for the benefit of creditors has never sought or obtained, and which fund could, in any event, only be received by the assignee, but would not become part of the general estate’s receipts, and which the assignee could only hold in the capacity of trustee for "trust beneficiaries” under article 3-A of the Lien Law. The position of such assignee would be no better than that of his assignor (Kane Co. v Kinney, 174 NY 69, 73).
The motions of the assignee and of the mechanic’s lienor Koren-DiResta Construction Co. seeking confirmation of the proposed distribution by way of priorities of mechanics’ lienors are all denied.
The issue of the propriety of the settlement "offer” made by *72 Consolidated Edison and the bona ñdes of the numerous claims of "trust beneficiaries” to said "settlement fund” and as to their alleged position as to any and all "jobs” will be held before this court.
Settle order on notice to all creditors (trust beneficiaries, lienors, and otherwise interested parties); and, a copy of said order, as entered, is also to be served upon all such creditors by ordinary mail no less than 15 days prior to the said hearing; the date of said hearing to be set forth by the court in the order to be submitted.